1
2
3
4
5
6
7
8                      **IN THE UNITED STATES DISTRICT COURT**
9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11  LOL FINANCE COMPLANY,                    ) Case No.: 1:10-cv-00078 LJO JLT
                                             )
12              Plaintiff,                   )
                                             ) FINDINGS   AND   RECOMMENDATIONS
13                                           ) GRANTING IN PART AND DENYING IN PART
         v.                                  ) PLAINTIFF'S   MOTION   FOR   ENTRY   OF
14                                           ) DEFAULT JUDGMENT
                                             )
15  DWIGHT G. MEBANE, HELEN L. MEBANE,       ) (Doc. 38)
    DWIGHT AND HELEN MEBANE TRUST,           )
16  JUSTIN J. MEBANE, CHET B. MEBANE,        )
    MELISA J. WARNER, JOHN DOE, and ABC      ) ORDER GRANTING ORAL AMENDMENT TO
17  COMPANY,                                 ) TO  STRIKE  DEFENDANT  DWIGHT  AND
                                             ) HELEN MEBANE TRUST FROM COUNT IV
18              Defendants.                  ) OF THE THE FIRST AMENDED COMPLAINT
                                             )
19  _____ )

20          LOL Finance Company, ("Plaintiff") seeks the entry of default judgment defendants Dwight

21  G. Mebane and Helen L. Mebane ("Defendants").  (Doc. 38).  Defendants have not opposed

22  Plaintiff's motion for default judgment.  The motion was opposed by the defendants Justin Mebane,

23  Chet Mebane and Melisa Warner ("the Individual Defendants").  The Court reviewed Plaintiff's

24  motion and supporting documents, and heard oral argument on January 11, 2011.  For the following

25  reasons, the Court recommends that Plaintiff's motion for default judgment be **GRANTED IN**

26  **PART AND DENIED IN PART**.

27  ///

28  ///

                                            1

**I.  Procedural History**

On January 14, 2010, Plaintiff filed its complaint against Helen Mebane, individually and as trustee of the Dwight and Helen Mebane Trust.  (Doc. 1).  An amended complaint was filed by Plaintiff on July 1, 2010, against Dwight Mebane, Helen Mebane, the Dwight and Helen Mebane Trust ("the Trust"), Justin J. Mebane, Chet B. Mebane, Melisa J. Warner, and ABC Company.  (Doc. 18).  Plaintiff alleged breach of contract, conversion,  conspiracy to commit conversion and for specific performance of the Standstill Agreement entered into by Defendants, the Trust and Plaintiff. *Id.* at 7-8.

Defendants were properly served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  Defendants Chet Mebane and Justin Mebane filed their answer to the complaint on August 3, 2010.  (Doc. 21).  Defendant Melissa J. Warner filed her answer on August 26, 2010.  (Doc. 30).  Though a summons has issued to the Trust, no proof of service has been returned demonstrating proper service to this defendant.

Upon application of Plaintiff, default was entered against Dwight Mebane and Helen Mebane on November 4, 2010.  (Doc. 35).  Plaintiff filed its motion for default judgment on December 9, 2010.  (Doc. 38).  On January 3, 2011, Plaintiff filed a supplemental brief in support of its motion in accord with the Court's order, addressing whether default judgment should be granted while other defendants remain in the action.  (Doc. 44).  The Individual Defendants filed their partial opposition to the motion on January 4, 2011.  (Doc. 45)

On January 11, 2011, the Court heard argument on the matter.  At the hearing, Plaintiff conceded that default judgment should not be entered as to Counts II and III and withdrew its request for entry of default judgment as to Count I.  In addition, Plaintiff moved the Court to amend the First Amended Complaint to strike Count IV as to defendant, the Dwight and Helen Mebane Trust.  The Court granted this request.

**II.  Legal Standards for Default Judgment**

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment.  Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a

1   default judgment.  Fed.R.Civ.P. 55(a)-(b).  After the entry of default, well-pleaded factual allegations

2   regarding liability are taken as true, but allegations regarding the amount of damages must be

3   proven.  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*,

4   559 F.2d 557, 560 (9th Cir. 1977).

5          The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.

6   *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v.*

7   *Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  In addition, granting or denying a motion for default

8   judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1980 (9th Cir.

9   1980).  The Ninth Circuit opined,

10         Factors which may be considered by courts in exercising discretion as to the entry of a
           default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits
11         of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of
           money at stake in the action, (5) the possibility of a dispute concerning material facts, (6)
12         whether the default was due to excusable neglect, and (7) the strong policy underlying
           the Federal Rules of Civil Procedure favoring decisions on the merits.
13

14   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default

15   judgment is disfavored.  *Id.* at 1472.

16   **III.  Discussion and Application of *Eitel* Factors**

17         Plaintiff alleges it agreed to provide Dwight Mebane and the Trust with a revolving line of

18   credit in the principal amount of $1.5 million in 2005.  (Doc. 1 at 3).  According to the terms of the

19   agreement executed on March 10, 2005, Dwight Mebane and the Trust promised to pay the sum of

20   $1.5 plus interest, on or before March 1, 2006.  *Id.*  In December 2005, Dwight Mebane, Helen

21   Mebane, and the Trust requested an increase in the revolving line of credit to $4 million and a

22   second line of credit of $4 million, which Plaintiff agreed to on the condition "that Borrowers agreed

23   to be jointly and severally liable for all indebtedness" under the two lines of credit.  *Id.*  In January

24   2006, Plaintiff agreed to consolidate the two lines into a new credit line and extend the due date;

25   Dwight Mebane, Helen Mebane, and the Trust agreed to pay $6 million on or before December 31,

26   2007.  *Id.* at 4.  In December 2007, Plaintiff agreed to increase the principal amount to $8 million

27   and extend the due date to November 30, 2008.  *Id.*  The due date was extended again in 2008.  *Id.*

28

3

1    Using these funds, over 13,000 head of cattle were purchased.  (Doc. 1 at 5).  Plaintiff held a

2    security interest in these cattle, and proceeds from the sale of any cattle, commercial security

3    agreements dated March 10, 2005; December 8, 2005; January 18, 2007; December 13, 2008; and

4    December 17, 2008.  *Id.* at 4.  Plaintiff "properly perfected and continued its security interest by

5    filing appropriate financing statements and continuation statements in the State of California."  *Id.* at

6    4; *see also id.* at 5.

7    Defendants and the Trust defaulted on the new line of credit.  (Doc. 1 at 5).  To address the

8    default, Plaintiff, Defendants, and the Trust entered into a "Standstill Agreement," under which

9    Plaintiff "agreed to forebear from taking legal action" as long as the principal amount of the loan was

10   reduced to $5 million by October 2009, and Defendants and the Trust provided Plaintiff with first

11   mortgages or deeds of trust on three specified parcels of real property located in Kern County,

12   California."  *Id.* at 5-6.  However, Dwight Mebane, Helen Mebane, and the Trust failed to reduce the

13   principal amount and failed to provide Plaintiff with the first mortgages or deeds of trust against the

14   parcels of land.  *Id.* at 6.  Further, proceeds of cattle sales were not remitted to Plaintiff.  *Id.*

15   Applying the factors articulated by the Ninth Circuit in *Eitel* to the facts above, the Court

16   finds as follows:

17       A.   Prejudice to Plaintiff

18   Plaintiff has no other alternative by which to recover damages suffered as a result of

19   Defendant's piracy.  *See J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7

20   (E.D. Cal. March 5, 2010).  Therefore, the Court finds that Plaintiff would be prejudiced if a default

21   judgment is not granted.

22       B.   Merits of Plaintiff's claims and sufficiency of the complaint

23   The Court will consider the merits of Plaintiff's substantive claims and the sufficiency of the

24   complaint together.  The Ninth Circuit has suggested that when these factors are combined, together

25   they require a plaintiff to "state a claim on which the plaintiff may recover."  *Pepsico, Inc.*, 238

26   F.Supp.2d at 1175, *citing Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D.

27   Cal. Feb. 14, 1996); *see also Abney v. Alameida*, 334 F.Supp.2d 1221, 1235 (C.D. Cal. 2004)

28   ("default judgment may not be entered on a legally insufficient claim").

4

*Breach of contract*

A claim of breach of contract is comprised of (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages to the plaintiff. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 F. App'x 661, 662 (9th Cir. 2009), citing *First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001); *Haberbush v. Clark Oil Trading Co.*, 33 F. App'x 896, 898 (9th Cir. 2002). Here, Plaintiff entered into loan agreements with Defendants and the Trust, and four separate agreements each gave a security interest in the cattle and the proceeds of sales, which was properly perfected.  The resulting damage for lack of payment on the loan and interest to Plaintiff is $8,801,963.88.  (Doc. 39 at 7).  Thus, Plaintiff has stated a claim for breach of contract.

*Specific performance*

At the hearing, Plaintiff moved to amend the First Amended Complaint to strike Count IV, for specific performance of the Standstill Agreement, as to the Trust defendant. The Court granted this oral amendment.  Therefore, Plaintiff seeks specific performance only against Dwight and Helen Mebane on Count IV.

Specific performance is not itself a cause of action, but rather "a *remedy* for breach of contract."  *Golden West Baseball Co. v. City of Anaheim*, 25 Cal.App.4th 11, 49, (Cal. Ct. App. 1994) (emphasis in original); *see also Harara v. ConocoPhillips Co.*, 337 F.Supp.2d 779, 796 (N.D. Cal. 2005) ("Specific performance is a form of contractual relief, not an independent claim"). Plaintiff has sufficiently stated a claim for breach of the Standstill Agreement such to entitle it to specific performance.  To establish a right to specific performance of the Standstill Agreement, Plaintiff must establish: "(1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate."  *Blackburn v. Charnle*, 117 Cal. App. 4 th 758, 766 (Cal. Ct. App. 2004)

Plaintiff alleges "the terms of the Standstill Agreement requiring Borrowers to provide [Plaintiff] with mortgages or deeds of trust against the Parcels are sufficiently clear and certain." (Doc. 18 at 9).  In addition, Plaintiff forbore on its right to legal action as consideration for the

1  Standstill Agreement, and performed as required.  The requested performance is identical to the

2  contractual terms, and there was mutuality of remedies.  Further, Plaintiff's argues that its legal

3  remedy is inadequate because Defendants "are insolvent and do not have the financial resources to

4  pay [Plaintiff] the amounts due." *Id.*  Therefore, Plaintiff has sufficiently stated a claim for specific

5  performance of the Standstill Agreement, which requires Defendants to provide Plaintiffs with

6  mortgages or deeds of trust against the named parcels of land.

7  *Conversion*

8  As recognized by the Ninth Circuit, conversion has three elements under California law:

9  "ownership or right to possession of property, wrongful disposition of the property right and

10  damages."  *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th

11  Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581, 35 Cal. Rptrt.

12  3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the

13  property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of

14  property rights; and damages").  Plaintiff has alleged that it held a property right in the cattle sold by

15  Defendants, which was "wrongfully transferred and/or sold . . . to a number of persons and entities,"

16  with Defendants retaining the proceeds.  (Doc. 1 at 8).  Therefore, the elements of conversion are

17  met. (Doc. 1 at 8).

18  *Conspiracy to commit conversion*

19  Conspiracy establishes joint and several liability by conspirators for an underlying tort.  *See*

20  *Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1228 (9th Cir. 1997).  Therefore,

21  a conspiracy to commit a tort requires commission of the underlying tort.  Generally, liability for

22  civil conspiracy requires an agreement to commit wrongful acts, commission of the act, and damages

23  to the plaintiff.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11, 869 P.2d

24  454 (1994).  As established above, Plaintiff establishes a claim of conversion, and damages.  In

25  addition, Plaintiff alleges Defendants "colluded and conspired to convert the Cattle Collateral and

26  the proceeds from the sale of the Cattle Collateral."  By these facts, Plaintiff establishes a conspiracy

27  to commit conversion by Defendants.

28  ///

C.   Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff is entitled to recover $8,801,963.88, minus the $74,560.24 received when 154 head of cattle were recovered and sold at auction on Plaintiff's account. (Doc. 39 at 8; Doc. 40 at 4-5; *see also* Doc. 1 at 8). Thus, the damages sought are proportional to Defendants' conduct.

D.   Possibility of dispute concerning material facts

The Court also considers the possibility of dispute as to any material facts in the case. Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Amended Complaint as true and (2) Defendants have not made any effort to challenge the Complaint or otherwise appear in this case. However, because other defendants remain to defend in the action, they may challenge whether a breach of the loan agreements, promissory notes and commercial security agreements related to the new revolving line of credit or whether any conversion or conspiracy took place.[1]   Therefore, this factor weighs against entry of default judgment.

E.   Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect. *See Eitel,* 782 F.2d at 1472. Here, defendants were properly served with the Summons and Amended Complaint. Given these circumstances, it is unlikely that failure to answer, and the resulting defaults entered by the Clerk of Court were a result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D.Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

///

///

---

[1] The claim for breach of contract was made against Dwight Mebane, Helen Mebane, and the Trust as was the claim for specific performance based upon the breach of the Standstill Agreement. (Doc 18 at 7). However, as noted above, Plaintiff moved to strike the claim for specific performance against the Trust. The claims for conversion and conspiracy to commit conversion were made against all defendants in the action. *Id.* at 7-8.

1    F.   Policy disfavoring default judgment

2        As noted above, default judgments are disfavored because "[c]ases should be decided on their

3    merits whenever reasonably possible. *Eitel*, 782 F.2d at 1472.  However, failure to answer the First

4    Amended Complaint makes a decision on the merits against the defaulting Defendants impractical.

5    On the other hand, a decision on the merits for the claims of breach of contract, conversion and the

6    conspiracy to commit conversion  may be favorable to the other defendants who remain to defend in

7    the action, as discussed below by the Court.  Consequently, the policy underlying the Federal Rules

8    of Civil Procedure favoring decisions on the merits weighs against Plaintiff.

9    **IV.   Default Judgment against Defendants While Others Remain**

10       Plaintiff seeks judgment against only Dwight Mebane and Helen Mebane, though the

11   Individual Defendants remain in the case and have filed answers.  Under the Federal Rules of Civil

12   Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are

13   involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims

14   or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ.

15   P. 54(b).  Therefore, the Court has discretion to decline entry of default judgment where a just reason

16   exists to delay entry of a final judgment to Defendants.

17       The Supreme Court warned that "absurdity might follow" in instances where a court "can

18   lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined

19   against the others." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  The Ninth Circuit has

20   summarized the *Frow* standard as follows: "[W]here a complaint alleges that defendants are jointly

21   liable and one of them defaults, judgment should not be entered against the defaulting defendant

22   until the matter has been adjudicated with regard to all defendants. *In re First T.D. & Investment,*

23   *Inc.*, 253, F.3d 520, 532 (9th Cir. 2001).  In addition, the Ninth Circuit extended the rule beyond only

24   jointly liable parties to those who are "similarly situated."  *Id.*

25       Plaintiff argues that "default judgment can be entered against the Mebanes without creating a

26   risk of inconsistent judgments."  (Doc. 44 at 1-2).  According to Plaintiff, "Ordering the Mebanes to

27   provide [Plaintiff] with the additional collateral required under the Standstill Agreement can have no

28   adverse effect on any of the other Defendants."  *Id.* at 3.  Further, Plaintiff asserts its claim for the

1  balance due on the line of credit does not create the risk of independent judgments because the

2  liability is both joint and several as to Defendants and the Trust. *Id.* With regard to the remaining

3  causes of action, Plaintiff argued in its papers that default judgment against Dwight Mebane and

4  Helen Mebane "for converting the Mebane cattle and proceeds and conspiring with each other to

5  perpetrate this misconduct does not preclude a judgment in favor of any of the other Defendants for

6  not taking part in the conversion and conspiracy." *Id.*

7      The Individual Defendants argue that default judgment as to the conversion and conspiracy to

8  commit conversion claims should not be entered because of the possibility of inconsistent

9  judgments. (Doc 45 at 2, citing *Frow*, 82 U.S. at 552; *Johnson v. Cate*, 2009 U.S. Dist. LEXIS

10  57942, at *5 (E.D. Cal June 23, 2009)). Individual Defendants assert that there is a "risk of

11  inconsistent results factually and legally," because they may challenge whether a conversion claim

12  has been stated at all, and a default judgment for conversion "would clearly be inconsistent with a

13  subsequent finding that no conversion occurred and, therefore, there was no tort to act as a predicate

14  for the liability of [Individual] Defendants (in conspiracy or otherwise) or that plaintiff's claim failed

15  to state a claim as a matter of law." *Id.* at 3-4. Consequently, Individual Defendants argue entry of

16  default judgment would be prejudicial to their case.[2] *Id.* at 4.

17      When cases involve multiple claims or parties, "[c]onsiderations of fairness and sound

18  administration of justice are also applicable to the entry of default judgment." *Johnson*, 2009 U.S.

19  Dist LEXIS 57942, at *2. In the supplemental briefing, Plaintiff argued that the default judgment

20  would not preclude a judgment in favor of the Individual Defendants, but Plaintiff failed to address

21  the *possibility* of inconsistent judgments regarding the claims for conversion and conspiracy, which

22  is the test under *Frow* of whether default should be entered while parties remain in an action to

23  defend. *See Frow*, 82 U.S. at 554. In this case, if default judgment is entered, the Defendants are

24  adjudged liable of the claims of conversion and conspiracy. However, if Individual Defendants

25  prevail at trial, there may be a finding of fact that no such conversion or conspiracy took place, and

26  _____

27  [2] Notably, Individual Defendants "have taken no position and lodged no Objection" regarding the entry of default
judgment for the contract claim against Dwight Mebane, Helen Mebane, and the Trust. (Doc. 45 at 4, n. 4). Their objection

28  rests on the prejudice to Individual Defendants and the possibility of inconsistent results on the claims of conversion and
conspiracy to commit conversion. *See id.* at 4.

there is a possibility of inconsistent judgments as to these claims if default judgment is entered against Defendants Dwight and Helen Mebane.  Moreover, the Trust has yet to be properly served in the matter, and is named as a defendant in the breach of contract claim.  At the hearing, Plaintiff conceded the position taken by the Individual Defendants that there exists a possibility of inconsistent judgments if default is entered against Defendants at this time.

Therefore, even if some of the *Eitel* factors had not weighed as heavily against Plaintiff, it is in the interest of justice to deny default judgment on Counts I, II and III against defendants Dwight Mebane and Helen Mebane while others remain to defend and the Trust has yet to be served. However, due to the motion to amend the First Amended Complaint to strike the Trust from Count IV, there exists no possibility of an inconsistent judgment if default judgment as to this Count is entered at this time.

Therefore, the Court will recommend that, as to Counts I, II and III, the motion for default judgment be **DENIED**.  As to Count IV, the Court recommends that the motion for default judgment be **GRANTED**.  This recommendation will be made without prejudice to Plaintiff's re-filing the motion at a later time.

## V.  Findings and Recommendations

Given the issues discussed above, and the strong policy of favoring decisions on the merits, the Court would be acting within its discretion in denying entry of default judgment as to the claims involving parties other than the defaulting defendants. *See Aldabe*, 616 F.2d at 1092.  Accordingly, the Court RECOMMENDS the following:

1.   Plaintiff's motion to amend the First Amended Complaint to strike Count IV as to the Dwight and Helen Mebane Trust is **GRANTED**;

2.   Plaintiff's request for entry of default judgment as to Count IV for specific performance of the Standstill Agreement be **GRANTED**;

3.   Plaintiff's request for entry of default judgment for its claims of breach of contract, conversion, and conspiracy to commit conversion be **DENIED WITHOUT PREJUDICE**.

1   These Findings and Recommendations are submitted to the United States District Judge
2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the
3   Local Rules of Practice for the United States District Court, Eastern District of California.  Within
4   14 days after being served with these Findings and Recommendations, any party may file written
5   objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's
6   Findings and Recommendations."  Replies to any objections shall be filed within 14 days of the
7   filing of the objections.  The parties are advised that failure to file objections within the specified
8   time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th
9   Cir. 1991).

11  IT IS SO ORDERED.

12  Dated:   **January 12, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE